IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 26, 2005

## DANNY RAY MEEKS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Davidson County**
**No. 05-C-13     Thomas W. Brothers, Judge**

_____

**No. M2005-00624-CCA-R3-HC - Filed December 1, 2005**

_____

Aggrieved of the Davidson County Circuit Court's summary dismissal of his petition for habeas corpus relief, the petitioner, Danny Ray Meeks, appeals. The habeas corpus court dismissed the petition because the petitioner did not make a partial payment of the filing fee as required by Code section 41-21-807. Although we believe that the court acted precipitantly, we affirm the order of dismissal on the basis that the petition fails to establish a claim for habeas corpus relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Danny Ray Meeks, Appellant, *Pro Se*.

Paul G. Summers, Attorney General & Reporter; and Blind Akrawi and Richard H. Dunavant, Assistant Attorneys General, for the Appellee, State of Tennessee.

### OPINION

The petitioner stands convicted of aggravated kidnapping, especially aggravated robbery, aggravated burglary and extortion. He was tried and found guilty by a Grundy County jury in 1990, and the trial court imposed an effective sentence of 48 years for the convictions. His convictions and sentences were affirmed on direct appeal, *see State v. Meeks*, 867 S.W.2d 361, 364 (Tenn. Crim. App. 1993), and the supreme court denied permission to appeal. The facts underlying the convictions relate to the abduction and robbery of Roger Phipps and the subsequent extortion of him and his wife, Lisa. The evidence and trial testimony are set forth in great detail in the court's opinion on direct appeal. *Id.* at 363-68.

In 1994, the petitioner instigated his first collateral attack by seeking post-conviction relief. *See Danny Ray Meeks v. State*, No. 01C01-9709-CC-00387 (Tenn. Crim. App., Nashville, Oct. 23, 1998). The petitioner alleged 57 grounds for relief, all of which were dismissed following

an evidentiary hearing. Another appeal ensued wherein the petitioner winnowed the number of issues to 10. Six of the issues involved allegations of trial counsel's ineffectiveness, one issue challenged the sufficiency of the evidence in terms of establishing that the victim suffered "serious bodily injury," two issues contested the correctness of the trial court's jury instructions, and the last issue complained of the trial court's sentencing determinations. *See id.*, slip op. at 2-3. On appeal, this court affirmed the dismissal of the post-conviction petition.

The instant appeal stems from the petitioner's second collateral attack[1] on his convictions and sentences via a *pro se* application for writ of habeas corpus filed in Davidson County. The rather amorphous and rambling grounds alleged in the petition include an attack on the constitutionality of the entire 1989 Criminal Sentencing Reform Act, another evidence-sufficiency complaint dealing with "serious bodily injury," a sentencing challenge based on *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), and a constitutional attack on the judicial interpretation of the extent of habeas corpus relief.

On January 12, 2005, the habeas corpus court entered an order, evidently *sua sponte*, directing the petitioner to comply with the requirements of Code section 41-21-801 *et seq.* within 20 days or suffer dismissal of his petition. The order recited that the petitioner had failed to file a pauper's oath, the affidavit required by section 41-21-805, and a partial payment of the filing fee as required by section 41-21-807. Subsequently, the habeas corpus court entered an order on February 11, 2005, dismissing the action because the petitioner "[f]ailed to file the partial payment of the filing fee as required by T.C.A. 41-21-807."

The appellate record before us discloses that on February 23, 2005, the petitioner filed a motion to alter or amend the February 11, 2005 order on the basis that he had made a good faith effort to pay the filing fee by submitting a written inmate trust account personal withdrawal request on January 21, 2005. The motion alleged that the prison staff had failed to process the withdrawal request in a timely fashion and that the petitioner was attempting to remedy the situation by "mak[ing] arrangements to pay the fee by Cashiers Check Number 14788." From the record, we discern that no action was taken with respect to the motion to alter or amend, and on March 8, 2005, the petitioner filed a notice of appeal from the February 11, 2005 order dismissing the application for writ of habeas corpus.

On appeal, the petitioner challenges the dismissal of his application based on a failure to pay a filing fee. He also raises as issues the trial court's failure to comply with Code section 29-21-108 and the failure to conduct an evidentiary hearing on his application.

---

[1] One of the attachments to the application is an uncertified copy of a pleading entitled "Application for Writ of Habeas Corpus," that purportedly was filed in 2000 with the Grundy County Circuit Court. A likewise uncertified copy of an order entered July 19, 2000 that dismissed the action is included. Consequently, it may be that the instant appeal is from the petitioner's third collateral attack on his convictions and sentences; even so, our decision is not affected.

## I. Failure to Pay Filing Fee

The payment of an initial filing fee was succinctly explained in *Jason Eugene Mize v. State*, No. M2003-00986-CCA-R3-CD (Tenn. Crim. App., Nashville, Dec. 18, 2003), involving a *pro se* litigant appealing the dismissal of his petition for writ of habeas corpus.

> Persons commencing a civil action in Tennessee's courts must pay an initial filing fee. Indigent persons are not excused from paying the initial filing fees required by Tennessee Code Annotated § 8-21-401(a) (2003). Because of the dramatic increase in the number of pro se civil proceedings being commenced by state prisoners, the Tennessee General Assembly enacted section 41-21-807 in 1996 to provide an orderly procedure for collecting the required filing fee from prisoners who file civil suits in state court. Tennessee Code Annotated § 41-21-807(a) requires prisoners to file certified copies of their trust fund account statements for the six months immediately preceding the filing of the complaint. In addition, Tennessee Code Annotated § 41-21- 807(b) provides:
>
> (1) If an inmate brings a civil action or files an appeal in forma pauperis, the inmate shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect as a partial payment of any court fees required by law, an initial partial filing fee of twenty percent (20%) of the greater of the average monthly:
>
> (A) Deposits to the inmate's account; or
>
> (B) Balance in the inmate's account for the six-month period immediately preceding the filing of the complaint or notice of appeal.
>
> . . . [.]
>
> (4) In no event shall an inmate be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the inmate has no assets and no means by which to pay the initial partial filing fee.

*Id*., slip op. at 2-3 (footnote omitted). The *Mize* court held that the petitioner should not have been prevented from proceeding with his petition for habeas corpus relief because he was unable to pay the initial partial filing fee. Even so, strict adherence to the dictates of Code section 41-21-807 is required before paying a filing fee is excused. *See Michael Settle v. State*, No. M2004- 00411- CCA-R3-HC (Tenn. Crim. App., Nashville, Nov. 7, 2005).

We note at the outset that we are not dealing with the petitioner's *inability* to pay a partial filing fee in the instant case. Rather, the petitioner announced his ability, intention, and efforts to pay the partial filing fee, and he asked the court to reconsider its dismissal of his action. In our view, the habeas corpus court should have explored the veracity and merits of the facts and allegations in the petitioner's motion to alter or amend judgment. From the record before us, we find no evidence that the court ever reconsidered whether the petitioner's action should be reinstated.

The state is suspicious of the written inmate trust account personal withdrawal request that the petitioner attached to his motion to alter or amend. The state notes, "The request has a typed date of January 21, 2005; however, it is presumably witnessed by a prison official, but it is not dated by the witness or the warden of the facility. The withdrawal request was filed on February 23, 2005, approximately 12 days after the petition was dismissed." The state may well be justified in questioning the petitioner's good faith efforts and/or intentions to pay the initial partial filing fee. We, however, are not prepared to credit the state's suspicions from a bare record, and we believe that the habeas corpus court had an obligation to make reasonable factual inquiries before allowing its order of dismissal to stand.

## II. Failure to Conduct Evidentiary Hearing

The petitioner's remaining issues essentially claim that he is entitled to a hearing on his application for a writ of habeas corpus. The state contends that the petitioner's failure to state a cognizable claim for habeas corpus relief should end the matter. We agree. Remanding this case would be an exercise in futility, and the interests of judicial economy and efficiency are better served by disposing of this case at this time.

We have carefully reviewed the petitioner's *pro se* brief on appeal and his filings seeking habeas corpus relief. It is abundantly evident that he has failed to state a cognizable claim for habeas corpus relief. We note, for example, that the petitioner writes the following in the initial paragraph of his statement of the case on appeal**.**

> This case presents the continued attempts of [the petitioner] to receive a judicial determination on the merits of his claims of constitutional due process and equal protection violations which have resulted in the denial of his Sixth Amendment right to a jury trial and the effective assistance of counsel; violation of the Due Process Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment by the trial judge's determination of alleged facts rather than by proof; and the imposition of excessive sentences and the improper denial of his petition for habeas corpus relief.

Elsewhere in his brief, the petitioner charges that there exists in Tennessee "an unconstitutional procedure which has been adopted by the Trial Court Judges for the disposition of habeas corpus

cases," that in 1989 "the Legislature unconstitutionally repealed the common law through the 1989 Criminal Sentencing Reform Act, which took away the defendant's right to have a jury determine the elements of the charged offense," and that state judges have made unconstitutional "use of judge-made law to deny prisoners their statutory and constitutional right to prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint."

This court has often noted that the "writ of [habeas corpus ] will issue in Tennessee 'only when "it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered" that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired.'" *State v. Ritchie*, 20 S.W.3d 624, 630 (Tenn. 2000) (quoting *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993)). "A void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment or because the defendant's sentence has expired." *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999). In contrast, "[a] voidable conviction or sentence is one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *Ritchie*, 20 S.W.3d at 630-31 (quoting *Taylor*, 995 S.W.2d at 83). Facial invalidity means that the "fact [depriving the court of jurisdiction] must appear clearly and indisputably either on the face of the judgment or in the original trial record before a writ of habeas corpus can issue from a Tennessee court." *Id*. at 633.

The burden is on the petitioner to establish that the judgment is void or that the sentence has expired. *State ex rel. Kuntz v. Bomar*, 214 Tenn. 500, 504, 381 S.W.2d 290, 291-92 (1964). A petition seeking issuance of a writ of habeas corpus may be summarily dismissed by a trial court if it fails to indicate that the petitioner's conviction is void. Tenn. Code Ann. § 29-21-109 (2000).

We have no doubt that measured by these well-settled standards and guidelines, the petitioner has failed to establish a claim for habeas corpus relief. His condemnation of the habeas corpus system in this state and of the 1989 Criminal Sentencing Reform Act in its entirety is not only baseless but completely beyond the scope of habeas corpus relief.

The dismissal of the petitioner's application for habeas corpus relief is hereby affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE